**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  19-190-9 |
| | ) | |
| JAMAL KNOX | ) | |

### Opinion and Orders on Suppression Motions

Presently before the Court are four Motions to Suppress filed by Defendant Jamal Knox. ECF Nos. 1016, 1073.  Mr. Knox, along with twelve other defendants, were charged in Count 1 of a Superseding Indictment with conspiracy to distribute 1 kilogram or more of heroin, 280 grams or more of crack cocaine, 100 grams or more of acetyl fentanyl and valeryl fentanyl, and 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, from on or about September 2017 to on or about November 2019.  ECF No. 33.  The charge against Mr. Knox arose out of an extensive and lengthy investigation of the drug trafficking organization named, "Hustlas Don't Sleep" (HDS).  The investigation of HDS was conducted by the Monroeville Police Department, the Federal Bureau of Investigation, the Allegheny County Police Department, and the United States Postal Inspection Service.  Relevant to the present suppression motions, Special Agent Eric Goucher of the Federal Bureau of Investigation authored four Affidavits in support of establishing probable cause to obtain a Title III intercept permitting capture of communications to and from Mr. Knox's phone, a warrant to search two cell phones associated with Mr. Knox, a warrant to search Mr. Knox's iCloud account, and a warrant to search a residence associated with Mr. Knox.  Mr. Knox asserts challenges to each of the warrants and seeks suppression of evidence obtained from the wire intercept and searches.  The government has responded to the suppression Motions, and they are ripe for resolution.  ECF Nos. 1068, 1078.  Each Motion will be addressed in turn.

I.       **Motion to Suppress Wire and Electronic Interceptions**

Special Agent Gaucher applied for and obtained a July 24, 2019 Order, authorizing the interception of wire and electronic communications for three telephones, one of which was Mr. Knox's.  Aff. Supp. of Application for Order Authorizing the Interception of Wire and Electronic Communications, June 24, 2019 (Misc. No. 19-864).  In Mr. Knox's Motion to Suppress Wire and Electronic Interceptions (ECF No. 1016), he contends that the warrant permitting law enforcement to intercept communications to and from his phone was obtained in violation of the "necessity requirement" of 18 U.S.C. §§ 2518(1)(c) & (3)(c)

A.       **Applicable Law**

"The statute governing the authorization of wiretaps, Title III, requires the government to demonstrate necessity when applying for wiretap authorization." United States v. Bailey, 840 F.3d 99, 113–14 (3d Cir. 2016).  "The purpose of the necessity requirement is 'to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications.'" Id. at 114 (quoting United States v. Giordano, 416 U.S. 505, 515 (1974)).  The Third Circuit "has acknowledged that '18 U.S.C. § 2518(3)(c) does not require the government to exhaust all other investigative procedures before resorting to electronic surveillance.'" Id. (quoting United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997)).  "The government need only lay a factual predicate sufficient to inform the judge why other methods of investigation are not sufficient." Williams, 124 F.3d at 418.  "[I]n determining whether th[e necessity] requirement has been satisfied, a court 'may properly take into account affirmations which are founded in part upon the experience of specially trained agents.'" Id. (quoting United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir.1989)).  "The statutory requirement that 'normal investigative procedures' be first exhausted,

must be reviewed in a 'practical and common sense fashion'" United States v. Armocida, 515

F.2d 29, 37 (3d Cir. 1975) (quoting 1968 U.S. Code Cong. & Admin. News at p. 2190).

  **B.**  **The Affidavit**

  In the Affidavit, Special Agent Goucher sets forth his general background, experience,

and training, as well as his involvement and familiarity with the investigation of HDS.  Aff. ¶¶ 1-

6.  He states that the primary goal of the investigation is "to determine the precise manner in

which the criminal organization operates" in order "to dismantle all of HDS's operations through

the acquisition of sufficient admissible evidence to prove beyond a reasonable doubt the full

scope of HDS's criminal activities and its membership." Aff. ¶¶ 26, 103.  "In order to

accomplish this goal, all HDS members and their roles must be identified, the precise manner in

which they operate, including their methods of transporting drugs and drug proceeds must be

determined, and their sources of supply, must be ascertained." Aff. ¶ 103.  Additional goals

include learning "the nature, extent, and methods of operation of HDS's illegal drug trafficking,"

"dates, times, places, and manner" of drug distribution, "locations where the controlled

substances are stored," the identities of coconspirators and the identities of sources of supply.

Aff. ¶ 26.

  With respect to the necessity requirement, Special Agent Goucher averred "that the normal

investigative techniques which have been, and will continue to be, used in the course of this

investigation are not reasonably likely to result in development of proof necessary and sufficient

for the identification and conviction of all the major participants for violations of the TARGET

OFFENSES, without the interception of wire and electronic communications to/from the

**TARGET TELEPHONES**." Aff. ¶ 105.  He then proceeded to provide the detailed facts and

circumstances as to each of the normal investigative techniques as related to the HDS investigation.

Physical Surveillance

Special Agent Goucher noted that physical surveillance was performed, but "in the absence of context, [physical surveillance] has not conclusively established the elements of the ongoing violations and has not established, and most likely will not conclusively establish, the identities of various conspirators or the locations of drugs and drug proceeds." Aff. ¶ 108. He noted that "ongoing physical surveillance is likely to thwart this investigation due to the layout of the streets and neighborhoods wherein HDS operates." Aff. ¶ 67. Special Agent Goucher stated that "HDS operations are often concealed and/or conducted inside single-family dwellings, businesses, apartment buildings, residential streets, and deserted lots and alleys." Aff. ¶ 111. He explained in more detail that "continued surveillance, without communications to provide context, is not expected to substantially enhance information that has already been obtained; rather, and as indicated previously, prolonged or regular physical surveillance of the conspirators would most likely be noticed, causing the conspirators to become more cautious and cease their activity, flee to avoid investigation and prosecution, threaten the safety of informants, or otherwise compromise the investigation." Aff. ¶ 109.

Search Warrants

During the course of the investigation, law enforcement had applied for and obtained search warrants to place GPS devices to track the location of some of the target's cars. Through the use of GPS monitoring, investigators were at times able to locate Mr. Knox and Wesley Ellis-Barnes, but law enforcement remained unable to confirm the reasons why Knox and Ellis-Barnes would go to particular locations. Aff. ¶¶ 119-120. Special Agent Goucher concluded that the

use of search warrants, in general, would not further the goals of the investigation in this case because such searches would tip off Mr. Knox and Mr. Ellis-Barnes to the existence of the investigation, would not result in information likely to assist in identifying other members of HDS, or the target suspect's sources of supply, or the locations HDS uses to conduct drug trafficking.  Aff. ¶ 125, 127.

Confidential Informants

As to the use of confidential informants, Special Agent Gaucher explained that confidential informants had been used during the investigation but cautioned that "the violent nature of many HDS members and associates makes sources reluctant, and in some cases unwilling, to testify against members of HDS for fear of retaliation."  Aff. ¶ 152.  In addition, it is difficult for a confidential source to infiltrate HDS, and the use of confidential sources risks tipping off targets.  Aff. ¶¶ 154, 155.

Trash Pulls

Special Agent Goucher described how trash pulls had been previously conducted on two separate residences.  Aff. ¶ 177-180.  However, Special Agent Goucher stated that, based upon his training and experience, as well as that of other investigators, "attempting to covertly recover trash put out for pick up by the TARGET SUBJECTS is extremely dangerous, and if investigators are detected during the process, it would alert the TARGET SUBJECTS that law enforcement is aware of their illegal activities."  Aff. ¶ 181.  He also noted that some of the subjects reside in apartments where trash from each resident is commingled in a single dumpster, making it difficult to determine what trash came from which apartment.  Aff. ¶ 182.

<u>Other Techniques</u>

Special Agent Gaucher also explained that Electronic Surveillance, Grand Jury subpoenas, Toll Records, and PEN Register information would compromise the investigation, be dangerous, and/or would not likely be useful.  Aff. ¶¶ 130-149.

**C.     Discussion**

Mr. Knox argues that Special Agent Goucher's Affidavit fails to demonstrate that the wiretap interceptions were necessary; and therefore, the July 24, 2019 Title III warrant is invalid. He argues that the Affidavit improperly relies on generalizations and boilerplate assertions, fails to provide specificity as to Mr. Knox, and fails to provide (or omits) factual averments to support the necessity requirement.  He further argues that the factual averments in the Affidavit demonstrate that law enforcement had successfully used confidential sources.  Mr. Knox argues that using confidential sources, along with physical surveillance and trash pulls (which he argues would also be effective[1]), demonstrate that the investigation was capable of being properly investigated without the use of electronic surveillance.  Finally, he argues that the averments in support of establishing the necessity requirement barely mention Mr. Knox, and where they do, the information provided is generic and applicable to any similarly situated target.

The goals of the HDS investigation, as stated in the Affidavit, were specifically related to the fact that law enforcement was investigating a large-scale drug conspiracy.  The investigation was lengthy and involved numerous drug trafficking conspirators who employed several

---

[1]  Mr. Knox points out that the Affidavit fails to provide an address for his residence and fails to provide an address for his girlfriend's residence.  He argues that the omission of these addresses make it difficult for the court to evaluate whether physical surveillance of the residences and conducting trash pulls would be an effective alternative investigative technique.  The investigation concerned numerous locations.  Mr. Knox did not cite any legal authority requiring the affiant to provide specific residential addresses when attempting to show the necessity for the investigators to intercept target suspects' wire and electronic communications.

different means and methods of conducting the criminal conspiracy and used multiple locations to store and sell their narcotics supply.  "[W]here the government investigation targets a large conspiracy and the individuals whose communications will be intercepted are members of that conspiracy, the necessity requirement relates to the demonstrated or probable inadequacy or danger of other investigative techniques to achieve the specific goals pursued by the investigation at hand."  United States v. Ellis, 693 F. App'x 137, 139-40 (3d Cir. 2017) (citing Bailey, 840 F.3d at 114–15)).  The Third Circuit has also concluded that, in evaluating affidavits involving investigation of large conspiracies, the necessity requirement is satisfied by the affiant showing, among other things, "the difficulty of penetrating an organization with a secretive nature and a propensity towards violence."  Williams, 124 F.3d at 418.  Even where, like here, law enforcement made controlled purchases during an investigation of a large conspiracy, the Third Circuit has permitted wiretap interceptions of a suspect's telephone, explaining that "arresting [him] alone would have frustrated the goals of the broader investigation."  Bailey, 840 F.3d at 114–15.

The Court finds no violation of the "necessity requirement" of section 2518.  Agent Goucher detailed why each of the normal investigative techniques would be ineffective, impractical, and/or dangerous (considering the goals of the investigation).  Special Agent Gaucher explained that some normal investigative techniques would be ineffective or dangerous due to the likelihood of alerting targets, the danger to confidential sources in comparison to the value they would provide, the infeasibility of obtaining useful information, physical logistical difficulties, or the low value of any information obtained.  He also specifically addressed the investigators' use of confidential sources, physical surveillance, and trash pulls, explaining why such techniques would be inadequate, dangerous, or risk to alert targets to the investigation.  The

fact that the investigation had successfully employed normal investigative techniques does not lead to the conclusion that such techniques should be used to the exclusion of electronic surveillance.  Here, Special Agent Gaucher was forthright in detailing the investigative techniques that had been used and pointed out instances where such were successful.  However, he also clearly explained reasons why such techniques would not likely successfully continue, would only marginally succeed, would compromise the investigation, or would be dangerous. The Court finds that the facts and circumstances, set forth in the Affidavit, establish that normal investigative techniques would have been ineffective and/or too dangerous.  Ellis, 693 F. App'x at 139 (affidavit must describe facts and circumstances surrounding the investigation that establish a "factual predicate" sufficient to allow the issuing court to determine such techniques will likely be unsuccessful or too dangerous) (citing United States v. McGlory, 968 F.2d 309, 345 (3rd Cir. 1992)).  Accordingly, Mr. Knox's Motion to Suppress Wire and Electronic Interceptions (ECF No. 1016) is DENIED.

## II.      Motion to Suppress Search of Cell Phones

Special Agent Gaucher applied for and obtained a February 3, 2020 search warrant, authorizing law enforcement to search two Black LG B470 flip phones associated with Mr. Knox.  Aff. Supp. of an Application for Search Warrants, Feb. 3, 2020, ECF No. 1073-4. Mr. Knox contends that the Affidavit of Probable Cause contains a materially false statement, which renders the warrant invalid under Franks v. Delaware, 438 U.S. 154 (1978).  Specifically, he contends  that the statement in the Affidavit, that a firearm and a large amount of currency was recovered from the search of 280 Seneca Street, was false.  He argues that, absent the above materially false statement, the Affidavit lacks probable cause to search the two phones.  He therefore argues that he has met his burden to support a Franks hearing.

### A.    Applicable Law

"The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit."  United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012), citing United States v. Yusuf, 461 F.3d 374, 383–84 (3d Cir. 2006).  "To obtain a Franks hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause."  United States v. Desu, 23 F.4th 224, 234 (3d Cir. 2022) (citing Franks, 438 U.S. at 171–72).  "The defendant must prove his allegations by a "substantial preliminary showing."  Desu, 23 F.4th at 234 (quoting Franks, 438 U.S. at 171–72).  "To carry his burden, [the defendant] cannot 'rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses."  Desu, 23 F.4th at 234 (quoting Yusuf, 461 F.3d at 383 n.8) (quoting Franks, 438 U.S. at 171).  "If a defendant succeeds in obtaining a hearing, he must then prove the allegations by a 'preponderance of the evidence' at the hearing itself in order for a judge to suppress evidence obtained as a result of the warrant."  Desu, 23 F.4th at 234 (quoting Franks, 438 U.S. at 156).  "'[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know.'"  Desu. 23 F.4th at 234 (quoting Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000)).  "'[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.'"  Desu, 23 F.4th at 234 (quoting Wilson, 212 F.3d at 783).  If a defendant succeeds in establishing that that there were false assertions or reckless omissions of fact, the defendant must then demonstrate that such assertions or omissions

were "material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3rd Cir. 1997).

### B.     The Alleged Materially False Statement

In support of the application for a search warrant to search the two phones, Special Agent Gaucher set forth his background, experience, and training, and he recited numerous investigative techniques that he had been involved with during other drug conspiracy investigations.  Aff. ¶¶ 1-5.  He identified the two target phones, stated that they were associated with Jamal Knox, explained that Mr. Knox was a target subject in a federal drug trafficking Title III investigation, and informed the reviewing judge that he had personally participated in the investigation involving Mr. Knox.  Aff. ¶¶ 6-7.  After describing the target telephones, Special Agent Goucher explained that said devices had been in secure law enforcement custody since they were recovered.  Aff. ¶ 11.  In the Probable Cause section of the Affidavit, he explained when, where, and how the target devices were obtained, provided information about Mr. Knox's criminal history and current involvement as a suspect in the investigation, and provided detailed statements regarding the evidence expected to be found on the target devices, grounded on his training and experience.  Aff. ¶¶ 12-17.

The alleged false statement, as referenced by Mr. Knox, "that a firearm and a large amount of currency was recovered from the search of 280 Seneca St.," is cited as appearing in paragraph 12 of the Affidavit.  ECF No. 1073 at ¶ 24.  Paragraph 12, however, does not contain such statement, nor does such statement appear anywhere else within the Affidavit.  Paragraph 12 states:

> 12.     On November 19, 2019, FBI Pittsburgh executed a search warrant at 280 Seneca Street, Turtle Creek, Pennsylvania.  This is a known residence for KNOX, who goes by his street name "Mayhem."  During execution of this warrant, agents

seized **TARGET DEVICES** and drug packaging materials.  During execution of
both an arrest and search warrant *at another of KNOX's known residences* on the
same day, *agents seized approximately $55,000 in U.S. currency*, three plastic
bags containing suspected fentanyl and/or cocaine (combined total package
weights of over 500 grams), a scale and grinder with unknown substance residue
on each, *a Mini Draco 7.62mm assault rifle and ammunition* and **TARGET
DEVICES**.

Aff. ¶ 12 (emphasis added).  Comparing Mr. Knox's version of Paragraph 12 with the actual

verbiage of Paragraph 12of the Affidavit, al it is plain that the Affidavit does not falsely state that

a firearm and currency were recovered from 280 Seneca Street.  Special Agent Goucher clearly

affirms that a firearm and currency were recovered from an entirely separate residence.  There is

no false statement; and therefore, there is no <u>Franks</u> violation.  Accordingly, Mr. Knox's Motion

to Suppress Search of Cellular Telephones (ECF No. 1073) is DENIED.

### III.    Motion to Suppress Search of Online Cloud Storage

Special Agent Goucher applied for and obtained an August 22, 2019 search warrant,

authorizing law enforcement to search information stored in Mr. Knox's iCloud account.  Aff.

Supp. of an Application to Search date in Jamal Knox's iCloud Account, Aug. 22, 2019.   ECF

No. 1073-5.  Mr. Knox contends that the Affidavit contained materially false statements and a

material omission, which he argues requires a <u>Franks</u> hearing.  438 U.S. at155-56.  His argument

relates to averments in the Affidavit that provide information about, and obtained from, three

confidential sources.  Aff. ¶¶ 10- 13(CS1); 14-17 (CS2); 18-21 (CS3).  Mr. Knox claims that

CS1 and CS2 made materially false statements regarding Mr. Knox's alleged drug trafficking

and they "greatly exaggerated if not fabricated the level of Defendant's alleged drug trafficking

as well as his violence and murderous conduct."  ECF No. 1073 at ¶ 30.  He also claims that CS3

made materially false statements regarding the level of Mr. Knox's drug trafficking.  ECF No.

1078 at ¶ 31.  Mr. Knox points out that the one transaction between himself and CS3 involved 1

gram of fentanyl.  Mr. Knox argues that Special Agent Goucher omitted material information by intentionally concealing the fact that the controlled purchase with CS3 was only 1 gram of fentanyl.  Aff. ¶ 32.

There are no materially false statements or omissions in the Affidavit.  Mr. Knox claims that all three confidential sources made materially false statements, but Mr. Knox has failed to make the necessary "substantial preliminary showing" sufficient to justify a Franks hearing.  Franks, 438 U.S. at 171–72.  Mr. Knox relies on "mere conclusory allegations" rather than providing an actual "offer of proof contradicting the affidavit."  Desu, 23 F.4th at 234.  Here, the confidential sources provided information about Mr. Knox's drug trafficking and association with violent crime.  Mr. Knox's complaints about these statements at best reflect a disagreement regarding the degree of Mr. Knox's alleged criminal activity.  In addition, even if Mr. Knox's version were true, it would not change the probable cause determination.  Removing these statements offered by the confidential sources and replacing them with the statements offered by Mr. Knox does not materially affet the probable cause decision.  As to Mr. Knox's assertion that the affiant intentionally omitted that the controlled buy involved only 1 gram of fentanyl, such omission is not material.  A judge, reviewing the affidavit in a commonsense manner and considering all of the information and circumstances presented, would be able to conclude that probable cause existed even if the Affidavit represented that the controlled buy involved 1 gram of fentanyl.  Also, removing the confidential sources' statements about Mr. Knox's criminal history, violence, and association with murders would likewise not affect the issuance of a valid warrant.  Accordingly, Mr. Knox's Motion to Suppress Search of Online Cloud Storage  (ECF No. 1073) is DENIED.

**IV.     Motion to Suppress Search of 7711 Tyler Road**

Special Agent Gaucher applied for and obtained a November 18, 2019 search warrant,

authorizing law enforcement to search two residences associated with Mr. Knox, one of which

was the 7711 Tyler Road address.   Aff. Supp. of Search and Seizure Warrants, Nov. 18, 2019.

ECF No. 1073-3.  The basis for the request for a search warrant was the multi-agency

investigation into the drug trafficking conspiracy of HDS and its members from at least

December 2018 and continuing to the date of the Affidavit at issue.  Aff. ¶¶ 8, 26.  On November

18, 2019, when Special Agent Goucher applied for the search warrant of the Tyler Road

residence, a federal Grand Jury had already returned a November 13, 2019 five-count indictment

against thirteen HDS individuals, including Mr. Knox.[2]  Aff. ¶ 27.  Mr. Knox raises the

following grounds for suppression: (1) the search warrant was not supported by probable cause;

(2) the Affidavit contained materially false allegations made by confidential source 1 (CS1) and

confidential source 2 (CS2); and (3) the information in support of the Affidavit was stale.

**A.     Probable Cause**

**1.     Applicable Law**

The Fourth Amendment of the United States Constitution protects against unreasonable

searches and seizures.  When making a probable cause determination, a magistrate judge must

ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be

found in a particular place.'"  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting

Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted)).  The Supreme Court

requires that the issuing magistrate "make a practical, common sense decision whether, given all

---

[2] Law enforcement had already obtained an arrest warrant for Mr. Knox.  Aff. ¶ 27.

the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," that there is probable cause to support a warrant.  Gates, 462 U.S. at 238.  "'Direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant.' " United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Conley, 4 F.3d at 1207). "'Instead, probable cause can be, and often is, inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide" the fruits of his crime.'" Hodge, 246 F.3d at 305 (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)) (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)). An "issuing court need only conclude that it would be reasonable to seek the sought-after objects in the place designated in the affidavit; a court need not determine that the evidence is in fact on the premises."  United States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005) (citing Conley, 4 F.3d at 1205) (other citations omitted).

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).  Reviewing courts must not "simply rubber stamp a magistrate's conclusions."  United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983). However, the United States Supreme Court has directed that "resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Conley, 4. F.3d at 1205 (quoting United States v. Ventrusca, 380 U.S. 102, 109 (1965) (quoted with approval in Gates, 462 U.S. at 237 n.10)).

### 2.    Averments in the Affidavit

In the Affidavit, Special Agent Goucher set forth his general background, experience, and training.  Aff. ¶ 1-8.  He then generally explained the types of drug-related and other criminal offense-related evidence that might be found when searching a residence.  Aff. ¶¶ 10-25.  Special Agent Goucher explained that investigators had obtained information related to Mr. Knox from two confidential sources, CS1 and CS2.  Aff. ¶¶ 32-36.  CS1 had known Mr. Knox for many years, had conducted narcotics-related business with him, and described Mr. Knox as a major drug trafficker, who distributed kilogram quantities of fentanyl and other drugs.   Aff. ¶¶ 32-33.  CS2 had known Mr. Knox for many years and described him as a "large quantity narcotics trafficker who has a close relationship to some of the most high-volume narcotics distributors in the Greater Pittsburgh area."  Aff. ¶ 35.   CS2 also reported that Mr. Knox was extremely violent, always had guns on his person, and was personally responsible for many shootings and homicides.  Aff. ¶ 35.   Special Agent Goucher then provided detailed averments describing a controlled buy between CS1 and Mr. Knox, and described how the investigators contemporaneously surveilled Mr. Knox, which provided highly persuasive evidence that Mr. Knox was using 7711 Tyler Road to store narcotics.  Aff. ¶¶ 39-42.  Special Agent Goucher also recounted the evidence obtained from GPS location tracking of Knox's vehicle, showing, in part, Mr. Knox's connection to 7711 Tyler Road.  Aff. ¶¶ 43-44.  Finally, the Affidavit discussed evidence obtained from Title III wiretap intercepts which revealed that other co-conspirators had referred to Mr. Knox.  Aff. ¶¶ 45-50.

### 3.    Discussion

Mr. Knox argues that, while there are averments that "may support the notion that Defendant was engaged in narcotics trafficking," the Affidavit is "silent as to whether this

involved 7711 Tyler Road.  ECF No. 1073, at ¶ 7.  To reach the conclusion that the Affidavit contains no information connecting Mr. Knox's alleged criminal activity to 7711 Tyler Road requires one to ignore the evidence that persuasively demonstrates a high probability that Mr. Knox was storing narcotics at 7711 Tyler Road.  Investigators were able to establish that Mr. Knox stopped at 7711 Tyler Road just prior to meeting the confidential source with whom Mr. Knox completed the controlled drug buy.  Such information was sufficient to support a finding of fair probability that evidence of drug trafficking would be found at 7711 Tyler Road.  Conley, 4. F.3d at 1205.  Similarly, the averments in the Affidavit established that Mr. Knox travelled to 7711 Tyler Road in the middle of the day and sometimes he would stay at the residence for long periods of time.

Mr. Knox also singles out certain averments and implies that such averments are circumstantial evidence at best, such that they do not support that Mr. Knox's drug activity involved 7711 Tyler Road.  ECF No. 1073, at ¶ 7.  However, direct evidence to connect the crime to the place to be searched is not required.  Hodge, 246 F.3d at 305.  Moreover, a judge reviews an Affidavit of Probable Cause in its entirety and considers the totality of the circumstances; a judge does not consider single averments in isolation.  Gates, 462 U.S. at 238. The reasonable inferences from Special Agent Goucher's Affidavit support the conclusion that evidence of drug activity, firearms, and other related evidence might be present at the 7711 Tyler Road residence.  The Court concludes that a judge, reviewing the Affidavit in a commonsense manner and considering all the circumstances, would conclude that probable cause had been established.

B.      **Materially False Statements**

Mr. Knox next contends that the Affidavit lacks probable cause because of knowing or reckless inclusion of misstatements of fact by CS1 and by CS2.  As to CS1, Mr. Knox argues that the Affidavit lacks corroboration that Mr. Knox is a kilo level dealer as CS1 stated.  Mr. Knox also points out what he perceives as anomalies between CS1's stated knowledge about Mr. Knox and the fact that CS1 did not provide any information about the target locations or about Mr. Knox's drug transactions.  As to CS2, Mr. Knox similarly claims that the Affidavit lacks sufficient corroboration of CS2's statement that Mr. Knox was extremely dangerous and always had guns on his person.  Mr. Knox also points out that there is no mention of any homicide victim, despite CS2's statement about Mr. Knox's involvement with homicides.  Finally, Mr. Knox points out that because the only drug transactions mentioned in the Affidavit involved only grams of fentanyl, such belies CS2's statement that Mr. Knox was a kilo level fentanyl dealer.

As with Mr. Knox's argument challenging the search of his iCloud account, he also fails to make the necessary "substantial preliminary showing" sufficient to justify a Franks hearing regarding the statements at issue.  Franks, 438 U.S. at 171–72.  Mr. Knox relies on "mere conclusory allegations" rather than provide an actual "offer of proof contradicting the affidavit." Desu, 23 F.4th at 234.  Here, the confidential sources provided information about Mr. Knox's drug trafficking and association with violent crime.  Mr. Knox's complaints about these statements at best reflect a disagreement regarding the degree of Mr. Knox's alleged criminal activity.  Thus, even if Mr. Knox's version were true, it would not change the probable cause determination.  Removing the statements offered by the confidential sources and replacing them with statements consistent with Mr. Knox's view, does not affect the fact that probable cause to search 7711 Tyler Road exists.  A judge, reviewing the affidavit in a commonsense manner and

considering all of the information and circumstances presented, would be able to conclude that

probable cause existed even if the confidential sources statements were removed and the judge

was instead told that Mr. Knox was a narcotics dealer, but not a "major" or "large quantity" level

dealer, and the judge was not told any information about violence, guns, or homicides connected

to Mr. Knox.

### C.     Staleness

Finally, Mr. Knox argues that, because the information contained in the Affidavit was

stale by the time the warrant was issued, probable cause did not exist to believe that the evidence

to be seized would be in the residence.  Mr. Knox specifically contends that, because the

controlled buy took place in October 2019, the information in the Affidavit supporting the

November 19, 2019 search warrant was stale.

Addressing the issue of staleness of information in an affidavit, the Third Circuit

explained as follows:

> Age of the information supporting a warrant application is a factor in determining
> probable cause.  If too old, the information is stale, and probable cause may no
> longer exist.  Age alone, however, does not determine staleness.  The
> determination of probable cause is not merely an exercise in counting the days or
> even months between the facts relied on and the issuance of the warrant.  Rather,
> we must also examine the nature of the crime and the type of evidence.

United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir.1993) (internal quotations and citations

omitted).  The Court has no trouble finding that the information in Special Agent Goucher's

Affidavit was not stale.  The Affidavit states that the investigation concerned a large-scale,

ongoing drug conspiracy that dated back to at least December 2018 and continued to the present.

Aff. ¶ 8 (*quote from Aff*: that dated "from in and around at least December 2018, through the

present time.").  The obvious inference is that Mr. Knox's alleged criminal conduct with respect

to the conspiracy is contemporaneous with the Affidavit.  Moreover, that the controlled buy took place in October 2019 does not automatically render such information stale considering the types of crimes being investigated.  Here, Special Agent Goucher informed the reviewing judge that Mr. Knox had recently been indicted (under seal) as a member of the conspiracy, but that he had not yet been arrested.  The inference from this fact is that evidence related to the alleged offenses would be found at the residence.  Finally, when reviewing the averments in their totality, it can be inferred that Mr. Knox was then presently engaging in drug trafficking.  Viewing the type of offenses at issue and the facts averred in the Affidavit, plus the inferences drawn therefrom, the Court concludes that the information in the Affidavit was not stale.  Accordingly, Mr. Knox's Motion to Suppress Search of 7711 Tyler Road (ECF No. 1073) is DENIED.

**VI.     Conclusion**

For the reasons stated above, Jamal Knox's Motion to Suppress Wire and Electronic Interceptions (ECF No. 1016) is DENIED.  Jamal Knox's Motion to Suppress Search of Cellular Telephones (ECF No. 1073) is DENIED.  Jamal Knox's Motion to Suppress Search of Online Cloud Storage  (ECF No. 1073) is DENIED.  Jamal Knox's Motion to Suppress Search of 7711 Tyler Road (ECF No. 1073) is DENIED.


IT IS SO ORDERED:


Dated: November 14, 2022

_____
Marilyn J. Horan
United States District Court Judge